STATE of Missouri, Appellant,

v.

Christine R. LEAVITT, Respondent.

No. WD 56229.

Missouri Court of Appeals, Western District.

May 11, 1999.

558

Mark A. Goucher, Prosecuting Attorney, Maysville, for Appellant.

Michele Puckett, Cameron, for Respondent.

Before HANNA, P.J., ELLIS and RIEDERER, JJ.

RIEDERER, Judge.

This is an interlocutory appeal from the trial court's order sustaining Respondent's motion to suppress evidence. We affirm.

### Facts

On May 12, 1997, an officer of the Missouri State Highway patrol stopped a yellow taxi traveling 95 miles per hour on U.S. 36 Highway. The officer approached the vehicle and asked Respondent for her driver's license. Respondent reached into a bag between the front seats of the vehicle, but was unable to produce her driver's license. The officer testified that Respondent appeared nervous, but that that was not unusual for an individual pulled over for an extreme speeding infraction. Respondent testified that the officer told her, "Step out of the car, and empty the contents of your pocket on the hood of my car." The officer testified that he noticed that Respondent had several items in the pocket of her pants, although she was wearing loose, baggy clothing, including a shirt that extended below her buttocks. The officer proceeded to tell Respondent to show him the items in her pockets. When asked the purpose of asking Respondent to show him the contents of her pockets, the officer testified "to insure that she didn't have anything in there that that would be of any harm to me." Respondent removed all of the objects from her pockets except one. The items produced included lighters, money, a wallet and a large locked knife. The officer then told Respondent to remove the remaining object in her pocket. The officer testified that Respondent did so and immediately returned the item to her pocket. The officer testified that he could tell the item was a small, black, round object that did not "appear to be a weapon." After Respondent put the item back in her pocket, the officer testified that he told Respondent to "take it back out of your pocket." Respondent testified that the officer said, "Let's see it," and something to the effect of, "I know you have something. Let's see it, don't hold it from me." After Respondent took the item out, which appeared to be a makeup case, the officer told Respondent to open it. Respondent testified that the officer said, "Let me see it." After the officer said, "no, let's see it," Respondent told the officer that it was just a makeup case. The officer again told Respondent, "Let me see it." Respondent testified that she felt like she had no choice, so she opened the case, which revealed a small empty silver disk that presumably held make-up. The officer noticed that a small plastic bag was sticking out from underneath the silver disk. The officer then told Respondent to give him the object. The officer lifted the metal disk inside the case and found a small plastic bag which contained a white powder substance. The officer suspected the substance was methamphetamine.

The officer testified that he did not do a pat-down search in this instance because Respondent was a female. The officer testified that he usually asks females to show him items that he cannot identify. The officer also testified that he was suspicious of the object because in his experience, people have tried to conceal illegal drugs in that type of container. The officer also testified: (1) that Respondent was not under arrest when he asked her to remove the black object from her pocket; (2) that there was nothing about her status that gave him cause for safety concerns; (3) that he did not ask Respondent for

consent for her to search herself; and (4) that had she of refused to produce the items from her pocket, he would not have forced her to do so.

On May 28, 1998, the State filed an information charging Respondent with the Class C felony of possession of methamphetamine, in violation of § 195.202.[1] On June 1, 1998, Respondent filed a motion to suppress evidence, pursuant to § 542.296. On July 23, 1998, the trial court held a hearing on Respondent's motion to suppress. After the hearing, the trial court sustained Respondent's motion. The trial court stated in its memorandum:

> The decisive facts as testified by the patrolman were: that defendant was not under arrest at the time of the search; that the patrolman knew the item was a make-up case; that he could see that it did not contain a weapon; that he had no concern for his safety; and that he never asked the defendant for consent to search.

This interlocutory appeal, pursuant to § 547.200, ensued.

### Standard of Review

Section 542.296.5(1) provides that a motion to suppress may be based on the fact that the search and seizure were made without a warrant and without lawful authority. "In a hearing to suppress evidence as having been obtained through an unlawful search and seizure, the State has the burden of showing that the motion should be denied. *State v. Hernandez*, 954 S.W.2d 639, 642 (Mo.App.1997). Review of the trial court's ruling on a motion to suppress evidence is limited to a determination of whether there is sufficient evidence to support the court's ruling based on the complete record before the trial court. *State v. Slavin*, 944 S.W.2d 314, 317 (Mo.App.1997). The trial court's ruling on a motion to suppress is reversed only if it is clearly erroneous. *Id.* The trial court's ruling is clearly erroneous if we are

left with a definite and firm belief a mistake has been made. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo.App.1995). The facts are viewed in the light most favorable to the trial court's ruling. *Slavin*, 944 S.W.2d at 317. Although the facts are reviewed under a clearly erroneous standard, the issue of whether the Fourth Amendment has been violated is a legal question we review *de novo*. *Id.*

### Discussion

#### A. Introduction

The State argues in its sole point on appeal that the officer's actions in securing and inspecting the contents of a makeup case while conducting a search for personal safety during a traffic stop were lawful, in that (1) the inspection of the make-up case was based on probable cause, and (2) the inspection was made with the consent of Respondent.

Respondent did not challenge the initial stop in her motion to suppress. Respondent challenged the search of her person, arguing that the search violated the Fourth Amendment and the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. The general principle is that "searches conducted outside of the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated excep-

---

1. All statutory references are to RSMo.1994, unless otherwise indicated.

tions." *State v. Hutchinson*, 796 S.W.2d 100, 104 (Mo.App.1990) (citations omitted)). A search is not unreasonable under the Fourth Amendment if it is: (1) a search incident to a lawful arrest; (2) a seizure of items falling within the plain view doctrine; (3) a search of an automobile where probable cause exists to believe that it contains a substance which offends the law; or (4) a protective search by officers for weapons upon less than probable cause to arrest. *State v. Holman*, 556 S.W.2d 499, 504–05 (Mo.App.1977) (citing, *State v. Hall*, 508 S.W.2d 200, 202–03 (Mo.App.1974)).

The officer testified that Respondent was not under arrest at the time he stopped her for the speeding · violation. The methamphetamine was not in plain view, nor did the officer search Respondent's automobile. The only justification for the officer demanding Respondent to empty her pockets would be to perform a protective search for weapons. We now determine whether this search of Respondent was justified as a protective search for weapons.

## B. Protective Search Under *Terry*

■ Once a valid stop has been made, police may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed. State v. Rushing, 935 S.W.2d 30, 32 (Mo. banc 1996). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Id.* (quoting, *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). As stated in *Terry*, 88 S.Ct. at 1884:

> The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

In analyzing a search pursuant to *Terry* "it is material to inquire" whether an officer could reasonably believe an object discovered during the pat down was a weapon. *State v. Harrison*, 957 S.W.2d 774, 777 (Mo.App.1997) (quoting, *State v. Vanacker*, 759 S.W.2d 391, 393 (Mo.App.1988)).

Appellant offers several reasons why the officer's fear for his safety was reasonable. Specifically, Appellant claims that when the officer pulled Respondent over she was nervous, that she kept reaching in the bag beside her, and that she was unable to provide her driver's license. After the officer told Respondent to step out of the car he noticed several items in the pocket of her jeans. Appellant claims that these reasons were sufficient for the officer to tell Respondent to take the items out of her pockets before she got into his patrol car.

Appellant claims that the officer telling Respondent to remove the objects from her pocket is supported by *Harrison*, 957 S.W.2d 774. In *Harrison*, a defendant was stopped for driving without a taillight. After a police officer pulled him over, the defendant got out of his vehicle and walked towards the officer's car. As the defendant approached, the officer noticed that the defendant appeared nervous, and that there was a cylindrical looking bulge in defendant's right front pants pocket. The officer testified that he told the defendant to stop and put his hands up on the car, while another officer got a permission to search form for the defendant to fill out. The officer then patted down the defendant because of the bulge he noticed earlier. The officer asked defendant what was in his pocket. The defendant produced a metal cylinder and handed it to the officer. The officer had never seen such an object and testified that he did not know if it was a weapon or not. The officer opened the cylinder "to see if it was a weapon" and found marijuana seeds.

Here, Respondent was told to step out of her vehicle, she did not approach the officer's car. The officer in this case did not produce a permission to search form

for Respondent to sign, and the officer did not pat down Respondent. Further, when the officer in *Harrison* told the defendant to take the object out of his pocket, he had already patted him down and did not know if the item in defendant's pocket was a weapon. Most critical of all, here, the officer testified he knew that the object in question was not a weapon. *Harrison* does not apply.

Appellant also contends that the case the trial court based its decision on, *State v. Hutchinson*, 796 S.W.2d 100 (Mo.App. 1990), is distinguishable from the present case. In *Hutchinson*, a police officer stopped the defendant's vehicle to check for intoxication, after the vehicle had drifted to the center line and back towards the shoulder. The officer approached the car and asked for the defendant's driver's license. The officer did not observe anything unusual about the interior of the car at that time and did not see any intoxicants. The officer asked the defendant to step out of the car. After the officer observed defendant's behavior, he determined that the defendant was not intoxicated. When the defendant got out of his car he left the door open. The officer noticed a pair of handcuffs lying on the floor of the car. The officer also saw a jacket lying on the back seat of the defendant's car. The defendant was not under arrest at this time, nor did the officer have a particular arrest in mind. The officer reached in and picked the jacket up off of the seat. When the officer picked the jacket up he could tell that one side of it was heavy. The officer felt near the pocket and could feel an outline of a revolver. The officer reached into the jacket pocket and found a revolver. The officer then patted down the defendant, and in doing so, felt an object in defendant's right shirt pocket. The officer took the item out and it was a Chap Stick. The officer took the top off the lip balm container and found that it contained a white powder, which was later tested to be methamphetamine. The court in *Hutchinson*, 796 S.W.2d at 106, determined that the officer's search of defendant's jacket and discovery of the weapon was not a search incident to an arrest, a *Terry* search for safety, nor otherwise justified. With regard to the officer's search of defendant after he found the weapon, the court in *Hutchinson* stated:

> The State cannot fall back on defendant's warrantless arrest on a "weapons charge" to constitutionally validate the search of defendant's person as being a search incident to a lawful arrest when the only probable cause for the warrantless arrest was the existence of the weapon found as a result of an illegal search and seizure.

*Id.* at 107. The court determined that the only possible circumstance that would excuse compliance with search warrant requirements under the facts of this case would be a pat down search. However, the court found that none of the evidence presented suggested the presence of a weapon in defendant's right front shirt pocket. *Id.* at 109. The court in *Hutchinson* held that "[t]he trial court did not commit error in suppressing the methamphetamine because there was evidence that the search could not be constitutionally upheld as a reasonable 'stop and frisk' warrantless search . . . ." *Id.*

Appellant argues that the present case is distinguishable from *Hutchinson* because the officer in this case had "reasonable specific articulable facts which gave him probable cause to examine the contents of the makeup container." However, justification for the search in our case was the protection of the police officer. This permitted a search for weapons. *Harrison*, 957 S.W.2d at 776. The officer examined the makeup case and concluded it was not a weapon. Not only could he not have reasonably believed the object was a weapon, *Id.* at 777, he in fact testified that after he saw the makeup case, "I could see it was not a weapon." He added that the black container caused him no concern for his safety. If the officer was

making a protective search under *Terry,* then once he determined the object was not a weapon and that he was not concerned for his safety, his *Terry* search was over. The rest of the search could not be justified as a protective search, nor could it be justified as an exception to the Fourth and Fourteenth Amendment warrant requirement. Therefore, it violated the Fourth and Fourteenth Amendment.

### C. Consent

 Appellant makes a separate argument that Respondent consented to taking the items out of her pockets since she voluntarily complied with his requests. A consensual search conducted without a search warrant does not violate the Fourth Amendment, even though the search is not otherwise supported by probable cause or a reasonable suspicion of criminal activity. *State v. Garcia,* 930 S.W.2d 469, 472 (Mo. App.1996). For consent to be valid it must be freely and voluntarily given by a person with the authority to consent and the search must not exceed the scope of the consent given. *Id.* "Consent is freely and voluntarily given if, considering the totality of the circumstances, the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so." *Id.* Consent to search may be express or implied. *Id.*

 Appellant argues that if a person hears and responds to the questions or requests of an officer, the implication is that the person is voluntarily and consensually responding. However, the State does not satisfy its burden of showing that consent was voluntary merely by showing a submission to a claim of lawful authority. *State v. Talbert,* 873 S.W.2d 321, 324 (Mo. App.1994). Rather, we examine the totality of the circumstances of this case. The trial court correctly observed in its memorandum that the officer never asked Respondent for consent to search. Respondent testified that the officer did not ask her, but told her to "empty the contents of [her] pocket and put them on the hood of the car." Respondent also testified that the officer demanded to see the makeup case several times and that she did not feel that she had a choice. The officer testified that when he ordered Respondent to take the makeup case out of her pocket, "she seemed reluctant to do that." Further, the officer testified that when he ordered her to open the makeup case, "she was reluctant to do so." The officer wrote the same thing in his report. After examining the totality of the circumstances, we find that an objective observer would not conclude that Respondent made a free and unconstrained choice to consent to empty her pockets. The search was not conducted with the consent of Respondent.

We affirm the judgment of the trial court.

All concur.