

# Missouri Court of Appeals

### Southern District

### In Division

STATE OF MISSOURI, )
                       )
          Appellant, )
                       )  No. SD38750
vs. )
                       )  FILED:  May 29, 2025
DENISE MARGARET LAFFERTY, )
                       )
         Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Jeffrey M. Merrell, Judge

## **AFFIRMED**

This is an interlocutory appeal by the State from the circuit court's order sustaining a motion by Denise Margaret Lafferty ("Lafferty") to suppress evidence in a criminal case. *See* section 547.200.1(3) (permitting such an appeal).[1]  The State contends that the circuit court's order of suppression was erroneous because the warrantless "***Terry*** search of [Lafferty] was not unconstitutional" and "was not the but-for cause of evidence being discovered."  Because the State failed in its burden to demonstrate either of these contentions, we affirm.

### **General Legal Background**

A motion to suppress may be based on the ground that "the search and seizure were made

---

[1] All statutory references are to RSMo 2016.

without warrant and without lawful authority[.]" Section 542.296.5(1). "The state bears the risk of non-persuasion and the burden to prove by a preponderance of the evidence that the seizure of evidence was constitutionally proper." *State v. Bales*, 630 S.W.3d 754, 758 (Mo. banc 2021); *accord* section 542.296.6.

As relevant here, "[t]he Fourth Amendment to the United States Constitution guarantees the right of all citizens to be free from unreasonable searches and seizures." *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004). "Generally speaking, a search or seizure without a warrant is unreasonable unless the circumstances bring it within a well-recognized exception." *State v. Beck*, 436 S.W.3d 566, 568 (Mo.App. 2013). The "stop and frisk" exception to the warrant requirement, first acknowledged by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), is the sole exception upon which the State relies to validate the warrantless search of Lafferty at issue. The basics of this exception are as follows:

> An investigative stop is permitted under the Fourth Amendment when a law enforcement officer is able to point to specific and articulable facts which, taken with rational inference from those facts, create a reasonable suspicion that a person has or is about to commit a crime. Once a valid stop has been made, police may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.

*State v. Rushing*, 935 S.W.2d 30, 32 (Mo. banc 1996) (internal citations and quotation marks omitted). Although a *Terry* search generally involves a pat down, "where the officer sincerely fears a hidden weapon might be concealed, a more extensive search may be appropriate in particular circumstances." *State v. Waldrup*, 331 S.W.3d 668, 674 (Mo. banc 2011) (internal quotation marks omitted).

**Factual and Procedural Background**

The circumstances giving rise to the criminal charge against Lafferty arose following a

traffic stop. Lafferty moved to suppress "all physical evidence and statements that followed the traffic stop." At the hearing held on the motion, Deputy Mark Shinn ("Deputy Shinn") testified he was on patrol and initiated a traffic stop of a vehicle in which Lafferty was a passenger. The basis for the stop was that the vehicle had crossed the center line twice and failed to come to a complete stop at a stop sign. Upon speaking with and running a computer check for warrants on the vehicle's driver, Deputy Shinn discovered active warrants. The driver was then removed from the vehicle and placed under arrest.

Regarding Lafferty, Deputy Shinn testified that she was sitting in the vehicle's front passenger seat and "was fidgety and moving her legs and hands quite a bit." This was suspicious "[b]ecause normally most people ain't going to be moving around and kicking stuff underneath the seat, moving the seat around." Deputy Shinn ran a computer check for warrants on Lafferty but testified the check "did not pull a return" on her. Deputy Shinn then testified:

> She was -- I don't remember if I had her exit the vehicle or another deputy on scene had her exit the vehicle. But she was asked to empty her pockets and asked if she had a knife. And she said she may have a knife.
>
> Being, though, she's a female, and no male officers on the scene, I requested she empty her own pockets out, which she did.[2] And she handed me a little glass vial.

According to Deputy Shinn, the glass vial was "about three inches long" and "had a little white powdery substance inside of it." He informed Lafferty he was going to conduct a field test of the substance, suspecting it was methamphetamine, and she "advised [him] at the time it was Fentanyl." Lafferty was then placed under arrest. Thereafter, a canine unit conducted a search of the vehicle but Deputy Shinn could not recall what said search discovered. On cross examination, Deputy Shinn affirmed that he asked Lafferty to empty her pockets. When asked

---

[2] Both parties agree that what Deputy Shinn meant to say here was that there were no *female* officers on the scene.

on redirect why he had Lafferty empty her pockets, Deputy Shinn responded:  "Officer safety issue, she advised me she had a knife in her pocket -- or possible knife in her pocket."

The State offered no additional testimony or exhibits.  Following the State's presentation of evidence, counsel for Lafferty conceded that he did not think the vehicle stop was unconstitutional but he took issue with the emptying of Lafferty's pockets and requested time for additional briefing.  Having received leave from the circuit court, the parties thereafter filed suggestions, in which they primarily discussed (and disputed) whether the search of Lafferty's pockets was lawful under ***Terry*** and whether a case decided by the western district of this Court, ***State v. Leavitt***, 993 S.W.2d 557 (Mo.App. 1999), is sufficiently analogous to be controlling.  In its ensuing order, the circuit court observed that, "[a]s in ***Leavitt***, in this case (1) [Lafferty] was not under arrest; (2) the law enforcement officer asked [Lafferty] to 'empty her pockets' rather than conducting a permissible ***Terry*** pat-down of [Lafferty]; and (3) there was no evidence that [Lafferty] was asked for, or otherwise consented to search herself."  (Bold added.)  Ultimately, the circuit court concluded:

> "This Court is unable to distinguish the case at hand from the ***Leavitt*** case sufficiently to find that the State carried its burden of proving that [Lafferty]'s motion to suppress evidence should be denied.  This Court, therefore, finds that it must SUSTAIN [Lafferty]'s motion to suppress evidence in this case."

(Bold added.)  The State timely appeals this decision.

## Standard of Review

> Any ruling on a motion to suppress must be supported by substantial evidence.  This Court reviews the facts and reasonable inferences therefrom favorably to the circuit court's ruling and disregards contrary evidence and inferences.  Whether a search is permissible and whether the exclusionary rule applies to the evidence seized are questions of law reviewed *de novo*.  This Court is primarily concerned with the correctness of the trial court's result, not the route the trial court took to reach that result, and the trial court's judgment must be affirmed if cognizable under any theory, regardless of whether the trial court's reasoning is wrong or insufficient.

4

***State v. Douglass***, 544 S.W.3d 182, 189 (Mo. banc 2018) (internal citations and quotation marks omitted).

## Discussion

The State argues the circuit court clearly erred by suppressing the evidence Deputy Shinn found during the search because the search was a valid search under ***Terry*** and its progeny and, even if the search was invalid, it was not the "but-for" cause of the discovery of the evidence. Neither party disputes the propriety of the traffic stop, the propriety of Lafferty's seizure as a passenger in the stopped vehicle, or that Deputy Shinn possessed reasonable suspicion to believe Lafferty was armed and dangerous. The only dispute is whether, after Lafferty told Deputy Shinn she had a knife or "possible knife" in her pocket, Deputy Shinn's command instructing Lafferty to empty her pockets was a constitutionally valid protective search.

As the United States Supreme Court noted in ***Terry***, a protective search,

> unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

392 U.S. at 29. Because "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience," the Court emphasized the fact that the officer "confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons" and "did not conduct a general exploratory search for whatever evidence of criminal activity he might find." ***Id***. at 24-25, 29-30.

In a companion case to ***Terry***, the United States Supreme Court applied these limits in the

5

context of a law enforcement officer who performed a protective pocket search instead of a pat-down search. *See Sibron v. New York*, 392 U.S. 40, 63-65 (1968). The officer in *Sibron* approached the suspect, told him "[y]ou know what I am after," and thrust his hand into the suspect's pocket, finding heroin. *Id*. at 45. In reversing *Sibron's* conviction, the Court reasoned that, even if the officer had reasonable suspicion to search Sibron for weapons, "the nature and scope of the search conducted by [the officer] were so clearly unrelated to that justification as to render the heroin inadmissible." *Id*. at 65. The Court noted that unlike the search in *Terry*, in which the search consisted of a limited patting of the suspect's outer clothing and a pocket search only after the officer discovered weapons, the officer made no attempt at an initial limited exploration for weapons but immediately thrust his hand into Sibron's pocket. *Id*. The search was therefore not "reasonably limited in scope" to the protection of the detaining officer. *Id*.

The United States Supreme Court in *Minnesota v. Dickerson* further discussed the limitations placed upon law enforcement officers when they conduct protective searches under *Terry*. *See* 508 U.S. 366 (1993). In *Dickerson*, when the officer conducted a pat-down search, the officer felt a "small lump" in the suspect's front pocket and proceeded to reach into his pocket, retrieving a bag of crack cocaine. *Id*. at 369. The Court, in ruling that the search "overstepped the bounds of the strictly circumscribed search for weapons allowed under *Terry*" because the nature of the contraband was not "immediately apparent" to the officer, noted that when a law enforcement officer executes a "valid search for one item [and] seizes a different item, this Court rightly has been sensitive to the danger . . . that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." *Id*. at 378-79 (internal quotation marks omitted). The Court further noted that "[i]f the protective search goes beyond what is necessary to determine if the suspect is

6

armed, it is no longer valid under Terry and its fruits will be suppressed." *Id*. at 373.

*Terry*, *Sibron*, and *Dickerson* all reinforce the same principles – when a law enforcement officer has reasonable suspicion that the suspect is armed and dangerous, and the suspect is not under arrest, the officer must conduct a strictly limited protective search to determine whether the suspect is armed and where any weapons are located. The officer may then remove such weapons but may not remove any contraband – or anything else that is not a weapon – from the suspect's person unless the nature of the contraband is "immediately apparent." *Dickerson*, 508 U.S. at 379.

Before addressing these principles in the context of Deputy Shinn's search of Lafferty's pockets, we note that the State argues, and we agree, that the circuit court's reliance on the *Leavitt* case in granting Lafferty's suppression motion was misplaced. *Leavitt* bears a similarity to the instant case in that it also involved a male officer requesting a female suspected of having committed a traffic offense to empty her pockets instead of conducting a pat down. 993 S.W.2d at 559. The resolution of the case, however, turned on the fact that the suspect removed a makeup case from her pocket, put it back in her pocket, and was repeatedly asked by the officer to remove the item again after he had determined the object was not a weapon. *Id.* at 559-60. The officer then manipulated the makeup case by removing a metal insert, which revealed a bag of methamphetamine. *Id.* at 559. The *Leavitt* court concluded: "If the officer was making a protective search under *Terry*, then once he determined the object was not a weapon and that he was not concerned for his safety, his *Terry* search was over. The rest of the search could not be justified as a protective search." *Id.* at 562-63 (bold added). Because *Leavitt* does not address whether the officer's initial command to the suspect to empty her pockets ran afoul of *Terry*, the case offers little guidance regarding the similar command directed by Deputy Shinn to Lafferty.

7

We can, however, look to the opinions of courts from other jurisdictions that have applied the aforementioned principles derived from *Terry* to cases involving pocket searches. In *United States v. Brown*, an officer noticed that the suspect reached his index finger into his right pants pocket. *United States v. Brown*, 996 F.3d 998, 1003 (9th Cir. 2021). When the suspect denied doing so, the officer reached his hand into the suspect pocket and pulled out a plastic bag of heroin. *Id*. The court determined that the pocket search exceeded the permissible scope of a *Terry* frisk because the officer did not conduct any less intrusive search and opted for the more invasive pocket search before determining whether the suspect was armed and dangerous. *Id*. at 1009-1010. The court also noted that no special factors suggested the need for immediate or more intrusive measures. *Id*.

Similarly, in *U.S. v. Casado*, after monitoring potential drug activity, and receiving information that the suspect had been handed something he placed in his right front pants pocket, law enforcement officers detained the suspect. *U.S. v. Casado*, 303 F.3d 440, 443 (2nd Cir. 2002). An investigator, noticing that the suspect had his right hand in the pocket in question, seized the suspect's right hand and then placed his own hand in the pocket without conducting any other type of protective search, finding crack cocaine. *Id*. The Second Circuit noted that there was no indication that the investigator could not have conducted a pat-down search of the pocket to determine whether his fear of a weapon was justified and then remove any weapon that he found. *Id*. at 447. Because law enforcement "took the more intrusive step of reaching inside Casado's pocket and removing everything in it," the search was not reasonably limited in scope to the protection of the detaining officer. *Id*. at 447-48. Likewise, multiple state courts have, in varying contexts, ruled that an officer's command to a suspect to empty everything in their pockets exceeds the constitutionally permissible bounds of a *Terry* search. *See State v. Bastian*,

150 P.3d 912, 916-17 (Kan. Ct. App. 2007) (command to empty pockets was indistinguishable from a pocket search conducted by law enforcement because the suspect's compliance was "an inevitable response to [the officer's] show of authority); *State v. Ingram*, 970 P.2d 1151, 1154 (N.M. Ct. App. 1998); *State v. Hlavacek*, 407 S.E.2d 375, 380 (W. Va. 1991).

We find such precedent persuasive and apply the principles in these cases to the current case. Here, Deputy Shinn testified that Lafferty indicated that "she may have a knife" or a "possible knife" in her pockets. At this point, Deputy Shinn suspected that Lafferty was armed but did not know the precise location of the knife, only that it was in one of her pockets. The record, however, is silent as to the number, size, and locations of Lafferty's pockets. Deputy Shinn did not ask Lafferty where the knife was specifically and did not conduct any type of strictly limited search to determine the precise location of the knife. Instead, Deputy Shinn commanded Lafferty to empty her pockets, and she then handed him the vial of Fentanyl at issue. By giving that command, Deputy Shinn required Lafferty to surrender everything from her pockets – not just the knife – and expose the contents of her pockets not only to Deputy Shinn's touch but also to the officer's gaze and scrutiny. Such a broad search is similar to the pocket searches conducted in *Sibron*, *Brown*, and *Casado* and extends beyond the contours of the limited searches *Terry* permits.

The State argues that because "concerns for delicacy and professionalism will understandably make male officers reluctant to pat down female subjects," Deputy Shinn made a compromise, conducting a pocket search that was reasonable under the circumstances. But in determining the reasonableness of a protective search under *Terry*, *Sibron*, and *Dickerson*, whether the detaining officer makes physical contact with the suspect is only one factor. Central to the Supreme Court's analysis in these cases is the intrusiveness of the search as measured by

9

its scope – whether it is reasonably limited in scope to finding weapons or whether it bears more of a similarity to a "general warrant to rummage and seize at will." ***Dickerson***, 508 U.S. at 378-79. The reasonableness of such a search also depends on whether there are more limited, less intrusive methods available to accomplish the protective search. *See* ***Casado***, 303 F.3d at 448. The record does not indicate – and the parties do not argue – that a limited pat-down search would have been unreasonable.

Given these circumstances, it is unlikely that a brief pat-down search of the outside of Lafferty's pockets would be more intrusive than a command to empty out those pockets and hand the contents to the detaining officer. In so holding, we are aware that "no judicial opinion can comprehend the protean variety of the street encounter" and we recognize "the infinite variety of situations in which a police officer may confront a suspect whom the officer reasonably fears is armed and dangerous." ***Casado***, 303 F.3d at 445, 448. Our holding should not be construed to indicate that pocket searches are *per se* unconstitutional. Rather, under these circumstances, Deputy Shinn's command to Defendant to empty her pockets went "beyond what [was] necessary to determine if the suspect [was] armed" and was an unreasonable protective search under ***Terry***. ***Dickerson***, 508 U.S. at 373.

The State argues in the alternative that the contraband should not be excluded because there was no "but-for causality" between the constitutional violation and "discovering the vial." The State insists that "the same evidence was discoverable through a pat-down."

As Lafferty points out, this argument refers to the "inevitable discovery" doctrine.

Evidence discovered and later found to be derivative of a Fourth Amendment violation must be excluded as fruit of the poisonous tree. The inevitable discovery doctrine, as an exception to this rule, provides that evidence may be admissible, despite a constitutionally invalid search, if law enforcement personnel would have ultimately or inevitably discovered the evidence.

10

***State v. Oliver***, 293 S.W.3d 437, 442 (Mo. banc 2009).  To satisfy this exception, the State "must prove by a preponderance of the evidence: (1) that certain standard, proper and predictable procedures of the local police department would have been utilized and (2) those procedures inevitably would have led to discovery of the challenged evidence."  ***State v. O'Connor***, 685 S.W.3d 428, 446 (Mo.App. 2023) (internal quotation marks omitted).

Lafferty argues that the State's argument is not preserved for appeal and should be denied review because it was not first raised below with the circuit court.  Even assuming without deciding that the State has "the ability to raise for the first time on appeal a previously unasserted exception" justifying admission of the contraband, ***id***. at 448, the evidence in the record fails to establish that Deputy Shinn would have found the contraband if he had conducted a pat-down search.  While Deputy Shinn testified that the contraband was found in a vial "about three inches long," he did not testify regarding several important details, including the precise location of the vial, whether the vial would have been easy to find, or whether, based on his experience and training, he would have been able to feel the vial and whether the incriminating nature of the vial would have been immediately apparent had he conducted a pat-down search.  Because the record is devoid of such evidence, the circuit court did not err in failing to apply the inevitable discovery doctrine.

For all of the foregoing reasons, the State's sole point on appeal is denied.

## Decision

The circuit court's order sustaining Lafferty's motion to suppress is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. –CONCURS

MATTHEW P. HAMNER, J. – CONCURS

11