**STATE of Missouri, Respondent,**

v.

**Dennis Max O'BRIEN, Appellant.**

**No. WD 55783.**

Missouri Court of Appeals,
Western District.

Aug. 10, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 5, 1999.

Application to Transfer Denied
Dec. 21, 1999.

Andrew Webb, Sedalia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

PAUL M. SPINDEN, Judge.

Dennis Max O'Brien appeals the circuit court's judgment convicting him of attempting to manufacture a controlled substance and of possessing ephedrine with the intent to manufacture methamphetamine. He complains that the circuit court erred in overruling his motion for judgment of acquittal because the evidence

was insufficient to support the jury's verdict.[1] We reverse.

Viewing the evidence in the light most favorable to the jury's verdict and disregarding all evidence and inferences to the contrary, the evidence established that on November 5, 1997, at 4:50 P.M., John Bartlett, a detective with the Marshall Police Department, received a tip from an informant that someone was at a paint store buying toluene, a chemical paint thinner commonly used in the manufacture of methamphetamine. The informant told Bartlett that the person who purchased the toluene was a passenger in a blue or black Ford Bronco and gave Bartlett the license plate number of the vehicle.

From past experience with methamphetamine laboratories, Bartlett knew that the producers of methamphetamine usually purchased the necessary chemicals during "a shopping spree," so Bartlett and Sergeant Tom Bolling, who drove a separate vehicle, went to a farm equipment supply store to see whether the suspect would show up there. Bartlett knew that the store carried Liquid Fire, a drain cleaner containing concentrated sulfuric acid commonly used to make methamphetamine. Bartlett saw a Ford Bronco that matched the description and license plate number of the vehicle driven by the individual who had purchased toluene at the paint store. From the store's parking lot, Bartlett used his cellular telephone to call a clerk in the farm equipment store and confirmed that someone was buying Liquid Fire. A brief time later, Bartlett watched O'Brien walk out of the store carrying a bottle of Liquid Fire and get into the driver's side of the Ford Bronco.

Bartlett and Bolling followed the vehicle for several blocks until it stopped in front of the Mount Olivet Church. Although the officers had hoped to follow the vehicle back to a suspected methamphetamine lab, they decided to approach the vehicle because they feared that someone in the Ford Bronco might be picking up a child at the church's preschool. As Bartlett walked toward the Bronco, he could see a pressurized green air type tank and a one-gallon container of toluene. Bartlett was aware that such tanks are used in the manufacture of methamphetamine.

O'Brien was in the driver's seat, and Gregory Morrow was in the front passenger's seat. When Bartlett told the men to get out of the vehicle, he noticed a bottle of Liquid Fire sitting on the front seat. Inside the car's glove compartment were four bottles of ephedrine and a bottle of pseudoephedrine. Morrow, who had purchased the toluene, claimed ownership of the ephedrine. Bartlett arrested O'Brien and Morrow.

A jury found O'Brien guilty of attempting to manufacture a controlled substance and possessing ephedrine with the intent to manufacture methamphetamine. The circuit court sentenced O'Brien to concurrent terms of four and three years imprisonment, respectively. O'Brien appeals.

■ O'Brien asserts that the circuit court erred in overruling his motion for judgment of acquittal. He contends that the evidence was insufficient to support convictions for possession of ephedrine with the intent to manufacture methamphetamine and attempt to manufacture methamphetamine. He asserts that the state failed to prove that he intended to manufacture methamphetamine and that evidence of his possessing ephedrine and psuedoephedrine, toluene, Liquid Fire, and an air tank was insufficient to prove that he took a substantial step toward the manufacture of methamphetamine.

---

1. Because these points are dispositive, we need not address O'Brien's other contentions on appeal that the circuit court erred in finding that the police officers had probable cause to arrest him, in prohibiting him from asking his character witnesses anything more than general questions regarding his reputation for being a law abiding citizen and in giving and refusing to give certain jury instructions.

This court dealt with this exact issue in the appeal involving O'Brien's cohort, Gregory Morrow. *State v. Morrow,* 996 S.W.2d 679 (Mo.App. W.D. 1999) (as modified on June 29, 1999). We, therefore, adopt the Honorable Robert Ulrich's opinion in regard to this issue with minor modifications.

 A person commits the crime of possession of ephedrine with the intent to manufacture methamphetamine when he possesses ephedrine or psuedoephedrine, their "salts, optical isomers and salts of optical isomers with the intent to manufacture methamphetamine or any of its analogs." Section 195.246, RSMo Supp.1998. A person commits the crime of attempting to manufacture methamphetamine when, with the purpose of committing the offense, he does any act that is a substantial step towards the commission of the offense. Section 564.011, RSMo 1994, and § 195.211, RSMo 1994. A "substantial step" is conduct that is strongly corroborative of the firmness of the actor's intent to commit the offense. Section 564.011. The conduct must be indicative of the defendant's purpose to complete the offense. *State v. Shivelhood,* 946 S.W.2d 263, 266 (Mo.App.1997). What act or conduct will constitute a substantial step will depend on the facts of the particular case. *Id.* A substantial step or overt act towards the commission of the crime must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. *United States v. Wagner,* 884 F.2d 1090, 1095 (8th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *State v. Motley,* 976 S.W.2d 502, 506 (Mo.App.1998).

Insufficient evidence was presented in this case to support O'Brien's convictions for possession of ephedrine with the intent to manufacture methamphetamine and attempt to manufacture methamphetamine. While the evidence indicated that O'Brien possessed chemicals that typically are used to manufacture methamphetamine, it was insufficient to prove that he intended to manufacture methamphetamine or took a substantial step beyond mere preparation towards the manufacture of the controlled substance. The state did not present any evidence that O'Brien planned to use the supplies he possessed to manufacture methamphetamine or that he knew how to manufacture the substance.

The state's evidence against O'Brien consisted only of his possession of ephedrine and pseudoephedrine, toluene, Liquid Fire, and an air tank. While the items found in O'Brien's possession can be used to manufacture methamphetamine, they also have valid uses and are legal to possess. The jury may have been entitled to be suspicious of O'Brien's possession of such chemicals and the air tank, but it did not have a sufficient basis for concluding, without speculation, that O'Brien intended to manufacture methamphetamine or that O'Brien took a substantial step toward the manufacture of methamphetamine. The evidence, therefore, was insufficient to support convictions for possession of ephedrine with the intent to manufacture and attempt to manufacture methamphetamine. *See United States v. Weston,* 4 F.3d 672 (8th Cir.1993) (evidence that defendant acquired gallon of methylamine from undercover agent insufficient in light of evidence that he had not told person who picked up chemical that he intended to manufacture methamphetamine, other chemicals and apparatus necessary for manufacture were not found, and no showing that defendant knew how to manufacture methamphetamine or knew anyone with that knowledge). *But see State v. Davis,* 982 S.W.2d 739 (Mo.App.1998) (evidence that items seized from defendant's house were commonly used to manufacture methamphetamine, that mixture found in house was sediment of first step of manufacturing methamphetamine, and that strong odor of ether was detected in the house was sufficient); *Motley,* 976 S.W.2d at 502 (evidence that defendant lived at residence containing items necessary to

complete first step and part of second step of manufacture of methamphetamine, that a jar in defendant's house contained a component of the first step in manufacturing methamphetamine, and that defendant actively took part in third step of manufacturing process at another unidentified location was sufficient).

We, therefore, reverse the circuit court's judgment.

EDWIN H. SMITH, Presiding Judge, and FOREST W. HANNA, Judge, concur.