**STATE of Missouri, Plaintiff–Respondent,**

v.

**Claude PARNELL, Defendant–Appellant.**

**No. 23197.**

Missouri Court of Appeals,
Southern District,
Division One.

July 18, 2000.

Irene Karns, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea L. Mazza, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Claude Parnell (defendant) was found guilty following a jury trial of possession of cocaine, a controlled substance, a class C felony. §§ 195.202.1 and .2.[1] He was charged as and found to be a persistent offender subject to being sentenced to an extended term of imprisonment. *See* §§ 558.016.3 and 558.016.7(3). He was sentenced to imprisonment for a term of nine years.

Defendant appeals contending the trial court erred in denying his motion for judgment of acquittal at the close of the evidence and thereafter sentencing him for the offense charged. He also contends the trial court erred in permitting the arresting officer to testify about certain post-arrest remarks made by defendant. This court affirms.

---

1. References to statutes are to RSMo 1994.

On the evening of June 19, 1998, at 11:23 p.m. Lacey Allen, a police officer for the city of Caruthersville, Missouri, observed an automobile with a missing headlight driving on the wrong side of the road. Officer Allen attempted to stop the vehicle. The automobile traveled about half a city block after Officer Allen engaged his emergency lights and siren before turning into a residential driveway and stopping. Officer Allen stopped his car behind defendant's.

Defendant got out of his vehicle immediately upon stopping. Officer Allen got out of his car. As defendant approached Officer Allen, he asked the officer to "cut him a break." Officer Allen was asked the following questions and gave the following answers about what occurred next:

Q. What did he say?

A. He said that he did not have a driver's license and I said well, he needed to have a seat in my patrol car so I could go ahead and run his license and everything and see what, what was the problem. Uh, but before doing so I asked him if I could perform a frisk search of him.

. . .

Q. . . . When you told him that you wanted to perform a frisk of his person what happened next?

A. That's when he put his hands in his pockets and he began walking back toward the front of his own vehicle.

Q. And when he started walking back toward the front of his own vehicle what did you say or do?

A. I told him to stop and he immediately began to run.

Defendant ran toward a nearby alley. Officer Allen ran after defendant. When defendant got to the alley, he stopped. Officer Allen explained, " [H]e stopped and walked out of, well he walked from the alley toward me, toward the street with his hand in his left pocket and pulled it out and threw something off." Officer Allen estimated that defendant was "no more than probably ten feet" from him when defendant threw the item. The item "appeared to be white or something." Officer Allen told the trial court and jury that defendant was turning toward him when defendant threw the item; that it appeared defendant was trying to hide making the throw. Defendant was told to lie face down. He did so, and Officer Allen handcuffed him and called for assistance.

Officers Jeff Ferrell and Tyrone Futrell responded to the call. When they arrived Officer Allen pointed to the area where he saw defendant throw something and asked Officer Ferrell to search the area. Officer Allen was asked if anything was found. He answered, "Yes, sir, he called me back to that area." He told the court and jury that Officer Ferrell showed him "a wadded up cigarette pack with a white, whitish, yellowish rock-like substance in a clear plastic bag." The substance in the package was later determined to be crack cocaine.

Officer Ferrell testified about his observations after he arrived to assist Officer Allen. He was asked the following questions and gave the following answers:

Q. And when you got to the location . . . can you tell us what you saw that was going on?

A. Okay. When I pulled up on the scene Officer Allen had one black male subject more or less in custody, detaining him. I asked Officer Allen what I could do to assist him since he called for assistance and he said I need you to, pointed and said I need to you [sic] go over there and look in that area which was in the area towards an alley.

. . .

Q. And when you went to that location that Officer Allen had pointed to did you find anything?

A. Yes, sir, I did.

Q. What did you find?

A. I, [sic] in the middle, more or less about ten foot from the street, uh, I found a wadded up Newport cigarette pack laying by itself, nothing around it.

Q. All right. Did you find anything else?

A. Yes, sir, I found several rocks in it something like crack cocaine would be.

Q. Inside the cigarette pack?

A. Inside the cigarette pack.

Q. And what did you do with that cigarette pack when you found it?

A. I hollered at Officer Lacey, he come over, and I turned it over to him.

Officer Ferrell testified that the cigarette package was very clean. It had no dust on it from the alley. It had no dew on it. He found nothing else at the location where he found the cigarette pack. He was asked if there was "the usual trash in this alley." Officer Ferrell answered that he did not think there was any trash in the alley at the time.

Defendant moved for judgment of acquittal at the close of the state's evidence and at the close of all the evidence. His motions included the allegation that "the evidence [was] insufficient as a matter of law to support a finding of guilt." Defendant's motion for new trial alleged that the trial court erred in denying his motion for judgment of acquittal at the close of the evidence.

Defendant's first point on appeal asserts the trial court erred in denying the motion for judgment of acquittal at the close of the evidence "in that the State did not present sufficient evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that the cigarette package found in the alley by Officer Jeff Farrell, which contained a substance later shown to be cocaine, belonged to [defendant] and had been discarded by him."

 The standard of appellate review of a claim of insufficient evidence to support conviction is whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). In making that determination appellate courts accept as true all the evidence favorable to the state, including favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *Id.*

This court had before it a fact situation similar to the one in this case in *State v. Williams,* 839 S.W.2d 732 (Mo.App.1992). In *Williams* a suspect was arrested and taken to a police station. He had not been searched prior to being transported. When the arresting officer and the suspect arrived at the police station and the suspect was removed from the vehicle that had brought him there, the suspect appeared to remove something from his waistband then, before entering the building, ran from the transporting officers. He was pursued by one of the officers. After running about a block and a half the officer saw him throw something. The suspect continued a short distance, then stopped and announced that he gave up; that he was not going anywhere.

The officer who pursued the suspect in *Williams* testified that "two white objects" was all he saw thrown. 839 S.W.2d at 734. The pursuing officer told another officer what he had seen. The other officer went to the area where the suspect was thought to have thrown the items. He found nothing on the ground but looked on top of a shed at the location. He found two white bottles on the roof of the shed. Both bottles contained cocaine.

One of the allegations of error in *Williams* was that the evidence was not sufficient to prove the defendant in the case possessed the two bottles that contained the cocaine. This court found that the evidence was sufficient to convince a rational trier of fact that the defendant in the case had possessed the items.

Here, as in *Williams*, defendant had not been searched before he ran from the arresting officer. His hands were positioned so that it appeared he removed something from a pocket in his trousers. The police officer who chased defendant saw him throw something that appeared white. This occurred a short distance from where defendant began running. Another officer was asked to look in the area for the items that were thrown. He discovered a white and yellow cigarette package with a bag inside that contained crack cocaine. The item that was found was the only item on the ground in the area where defendant appeared to throw something. As in *Williams*, the evidence was sufficient for a reasonable juror to conclude, beyond a reasonable doubt, that defendant had the cigarette package that contained the cocaine in his possession at the time of his arrest and discarded the item in the course of Officer Allen's pursuit of him. Point I is denied.

Point II is directed to Officer Allen's testimony concerning remarks defendant made to the officer after his arrest. Defendant argues the trial court "plainly erred" in permitting the state to elicit testimony concerning the remarks; "that its prejudicial impact as evidence of [defendant's] bad temper outweighed its probative value as to his guilt of the offense charged, which was none." Defendant asserts the evidence "damaged his credibility so severely that it led the jury to disbelieve [defendant's] testimony, the only evidence offered in his defense, and find him guilty because of his display of temper and obscenities against Officer Allen."

During the state's inquiry of Officer Allen, he was asked if defendant made any comments to him while driving defendant to the police station. Officer Allen answered that he had. He was asked what defendant said. Officer Allen repeated names defendant called him, including obscenities and racial epithets. Officer Allen was asked if he asked defendant his name. The officer answered that he did. He was asked what defendant said. The response he attributed to defendant was laced with obscenities.

There was no objection to the testimony to which Point II is directed. Failure to object at the earliest opportunity to the admission of evidence constitutes a waiver of the contention. *State v. Jackson*, 768 S.W.2d 614, 617 (Mo.App.1989). Absent an objection in the trial court, such a claim of error is not preserved for appellate review. *State v. Pospeshil*, 674 S.W.2d 628, 632 (Mo.App.1984). Rule 29.12(b), however, permits "[p]lain errors affecting substantial rights" to be considered in this court's discretion when it "finds that manifest injustice or miscarriage of justice has resulted therefrom."

Defendant's allegation that the trial court "plainly erred" is a tacit acknowledgement that any contention of error with respect to the statements in question was waived at trial. Having reviewed the whole record, this court finds no manifest injustice or miscarriage of justice as a result of the testimony about which Point II complains. Point II is denied. The judgment is affirmed.

CROW, P.J., and SHRUM, J., concur.