STATE of Missouri, Respondent,

v.

Joel Clark BALLENGER, Appellant.

No. WD 59885.

Missouri Court of Appeals,
Western District.

March 19, 2002.

Jeffrey E. Green, Osage Beach, for Appellant.

John T. Kay, California, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Mr. Joel Clark Ballenger appeals his conviction of attempting to steal anhydrous ammonia, a class A misdemeanor in violation of § 570.030.4.[1] We reverse.

## I. Factual and Procedural Background

On January 17, 2001, at approximately 12:30 a.m., two Moniteau County Sheriff's Deputies were on surveillance of a farm in Moniteau County. Earlier in the day, one of the farm's co-owners, Mr. Tim Blankenship, had contacted the sheriff's office when he saw three individuals on his property in a blue and white Oldsmobile. After stopping and speaking with these individuals, they left the premises. Mr. Blankenship believed that they were on his property in order to steal anhydrous ammonia from his applicator tank. Anhydrous ammonia is a source of nitrogen used to grow crops. However, some people use it as an ingredient to produce methamphetamine.

At approximately 1:15 a.m., the sheriff's deputies observed a truck approach the farm. The truck stopped in the vicinity of the anhydrous ammonia applicator tank, and an individual exited the truck and began to walk towards the tank. While walking towards the tank, this individual shined a flashlight on the top of the tank, where one would have to gain access to obtain the anhydrous ammonia.

At this time, the two deputies began walking toward the truck, which was near the tank. Moments later, the individual returned to the truck, and the truck began to drive away. The officers quickly returned to their vehicle, activated their emergency lights, and the truck was stopped. The officers approached the vehicle and ordered all three occupants to exit the truck.

Subsequently, the officers arrested the individuals and transported them to the Moniteau County Sheriff's office. Mr. Ballenger was charged with the class A misdemeanor of attempting to steal anhydrous ammonia.

At the bench trial, Gary Simmons, one of the arresting officers, testified that after detaining the three individuals outside the truck, he asked them what they were doing. In response, Mr. Ballenger stated, "Well, I know the owner of the farm. And we pulled back here to go to the bathroom." Deputy Simmons then asked Mr. Ballenger who the owner of the farm was, and Mr. Ballenger stated that it was Stan Blankenship, and that they had gone to school together. In addition, when Deputy Simmons asked the suspects who went up to the tank with a flashlight, all three individuals denied having a flashlight.

After arresting the suspects, Deputy Simmons seized a flashlight from the truck. Also, in the truck bed, a seven-gallon water container was discovered. It was Deputy Simmons' testimony that,

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

since he began working on methamphetamine cases, it has been common for individuals to use this sort of container to transport stolen anhydrous ammonia. Both the flashlight and the water container were admitted as evidence at the trial.

Mr. Michael Stanley Blankenship, a co-owner of the farm, also testified on behalf of the State. He stated that to gain access to the anhydrous ammonia applicator tank on the farm, one would have to turn off the public road, and drive a quarter mile. At the time Mr. Ballenger was arrested, Mr. Blankenship also testified that no signs were posted at the entrance of the Blankenship farm to notify the public that the road was private property.

After the State completed its case and rested, Mr. Ballenger moved for a directed verdict. This motion was denied. Mr. Ballenger did not present any evidence. The trial court found Mr. Ballenger guilty of attempting to steal anhydrous ammonia in violation of § 564.011, and he was sentenced to thirty days in the Moniteau County jail.

Mr. Ballenger asserts one point on appeal, arguing that the trial judge erred in overruling his motion for a directed verdict because the State failed to meet its burden of proof to establish that he had taken a "substantial step" towards the commission of the crime of stealing anhydrous ammonia.

## II.  Standard of Review

■ Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable fact finder might have found the defendant guilty beyond a reasonable doubt. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). A reviewing appellate court views the evidence and all reasonable inferences drawn there-

from in the light most favorable to the state and disregards all evidence and inferences to the contrary. *State v. Watson*, 947 S.W.2d 514, 515 (Mo.App. W.D.1997) (citing *State v. Idlebird*, 896 S.W.2d 656, 660 (Mo.App. W.D.1995)). It neither weighs the evidence nor determines the reliability or credibility of witnesses. *Id.* Reasonable inferences may be drawn from direct and circumstantial evidence. *State v. West*, 21 S.W.3d 59, 62 (Mo.App. W.D. 2000). "However, the inferences must be logical, reasonable and drawn from established fact." *Id.* at 62–63 (citing *State v. Friend*, 936 S.W.2d 824, 828 (Mo.App. S.D. 1996)).

## III.  Legal Analysis

■ The sole point for review in this case is whether the trial court had sufficient evidence to conclude that Mr. Ballenger's conduct rose to the level of taking a substantial step towards the commission of the crime of stealing anhydrous ammonia. Section 564.011.1 states that "[a] person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense." A "substantial step" is defined as "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1. The Supreme Court of Missouri has recently held that "[a]ttempt, under section 564.011, has only two elements: (1) the defendant has the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense." *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. banc 1999) (citing *State v. Molasky*, 765 S.W.2d 597, 601 (Mo. banc 1989)).

The underlying offense in this case, the crime of stealing, is committed if a person

"appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. Section 570.030.4 expressly makes the "theft of any amount of anhydrous ammonia" a class D felony.

The merits of Mr. Ballenger's appeal turn on whether his conduct constituted a "substantial step" towards the commission of the charged crime of stealing anhydrous ammonia. Making this determination is a fact intensive one, where the circumstances of a case must be weighed on an individual basis. *State v. Metz,* 43 S.W.3d 374, 380 (Mo.App. W.D.2001); *see also State v. O'Brien,* 5 S.W.3d 532, 534 (Mo.App. W.D.1999) (holding that any act found to be a substantial step towards the commission of the underlying offense under § 564.011.1 is dependent upon the particular facts and circumstances of each case). "A substantial step or overt act towards the commission of the crime must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *O'Brien,* 5 S.W.3d at 534 (citing *United States v. Wagner,* 884 F.2d 1090, 1095 (8th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990)). It is not permissible for a factfinder to conclude that an individual was attempting to commit an underlying offense if that conclusion is based upon speculation. *Id.*

In *State v. O'Brien,* the local police obtained a tip that an unknown individual, driving a dark colored Ford Bronco, was at a paint store buying *toluene,* a chemical paint thinner commonly used in the manufacture of methamphetamine. *Id.* at 533. From previous experience working on methamphetamine cases, the police officers knew that it was common for an individual who manufactures methamphetamine to go on a "shopping spree" to obtain all the necessary items for its production. *Id.* Accordingly, the police went to a local farm equipment supply store because the officers were aware that Liquid Fire, another product commonly used to manufacture methamphetamine, could be purchased at that store. *Id.* Upon arriving at the farm equipment supply store, the police recognized a Ford Bronco, which matched the earlier description given by the informant. *Id.* Subsequently an individual, later identified as Mr. O'Brien, left the store with a bottle of Liquid Fire and proceeded to drive away. *O'Brien,* 5 S.W.3d at 533. After stopping the vehicle, the police found a pressurized green air type tank,[2] a one-gallon container of toluene in the car, and four bottles of ephedrine and a bottle of pseudeophedrine. *Id.* Mr. O'Brien was arrested and charged with attempting to manufacture methamphetamine. *Id.* After being found guilty by a jury, this court reversed Mr. O'Brien's conviction finding that:

> While the items found in O'Brien's possession can be used to manufacture methamphetamine, they also have valid uses and are legal to possess. The jury may have been entitled to be suspicious of O'Brien's possession of such chemicals and the air tank, but it did not have a sufficient basis for concluding, without speculation, that O'Brien intended to manufacture methamphetamine or that O'Brien took a substantial step toward the manufacture of methamphetamine.

*Id.* at 534.

It is our belief that, like in *O'Brien,* there was insufficient evidence for the trial

---

**2.** The arresting police officer stated that these types of tanks are commonly used to manu-facture methamphetamine.

court to conclude that Mr. Ballenger had engaged in conduct that rose to the level of taking a substantial step towards stealing anhydrous ammonia. Although Mr. Ballenger's actions could be categorized as suspicious, they are not sufficient as a matter of law to conclude, without speculation, that Mr. Ballenger was attempting to steal anhydrous ammonia. The State's case against Mr. Ballenger at trial consisted of witness testimony that established that he was one of three individuals inside a truck that drove onto a private farm, without authorization, late at night, and that the truck parked near an anhydrous ammonia tank. One of these three individuals approached the tank with a flashlight, inspecting the upper portions of that tank (the region where one would be required to access to obtain the anhydrous ammonia). Moments later, this individual walked back to the truck and drove away. After the truck and its occupants were detained by the deputies, a water container was discovered in the back of the truck that could have been used to carry the anhydrous ammonia. Finally, there was testimony that Mr. Ballenger made statements to the officers that were found by the trial judge to be incriminating: 1) Mr. Ballenger knew one of the owner's of the farm (from going to school together), when in fact the owner did not know Mr. Ballenger, and 2) Mr. Ballenger's excuse for having stopped the truck near the tank (to go to the bathroom) was considered questionable by the judge.

Taken together, all of this evidence is insufficient to support the trial court's conclusion that Mr. Ballenger took a "substantial step" under § 564.011.1 towards stealing anhydrous ammonia. Without more, this evidence is not "strongly corroborative of the firmness of [Mr. Ballenger's] purpose to complete the commission of the offense [of stealing anhydrous ammonia]." § 564.011.1. If the suspect had made any

physical contact with the tank, his intention of stealing its contents would have been much clearer. But this was not the case. Here, this individual was only outside the truck for a very limited period of time. In fact, the arresting officer stated that "the whole thing took seconds." Accordingly, the conduct that occurred during this period of time was too brief and insignificant to constitute a substantial step towards the crime of stealing anhydrous ammonia. At no time did any of the three individuals remove the seven-gallon water container from the bed of the truck, nor did anyone take any other affirmative action toward removing the substance from the tank. In actuality, the only conduct which occurred in this case was one individual leaving the truck momentarily, shining a flashlight on the anhydrous ammonia tank, and then getting back in the truck and driving away. We hold that this conduct, by itself, cannot constitute a "substantial step" under § 564.011.1.

For the trial court to have found Mr. Ballenger guilty of attempting to steal anhydrous ammonia under § 564.011.1, the State needed to show additional conduct by the other suspects or Mr. Ballenger that demonstrated an intent to steal the anhydrous ammonia. There wasn't even evidence that any of the suspects were the same individuals seen previously on the farm. Further, Mr. Ballenger and his companions were driving a different vehicle from the one identified earlier in the day.

Our case is not like other attempted theft cases, where the defendant was found guilty after the State offered proof at trial that the defendant took some sort of physical possession over the goods they were charged with attempting to steal. For example, in *State v. Shivelhood*, the defendant, while at Wal–Mart, hid store merchandise inside a shopping cart under his

coat, and later surveyed the area while his son zipped up these items inside a backpack. 946 S.W.2d 263, 264 (Mo.App. S.D. 1997). This physical control of the merchandise was held to be "strongly corroborative of the firmness of [the defendant's] intent to steal the items he concealed under the coat, and were indicative of his purpose to complete the theft." *Id.* at 266; *see also State v. Merchant,* 871 S.W.2d 102, 104 (Mo.App. E.D.1994) (holding that the defendant was guilty of attempting to steal goods worth over $150 when defendant took the affirmative steps of knocking a portion of a brass railing off a trolley and bending it into thirds); *State v. Friend,* 936 S.W.2d 824, 826 (Mo.App. S.D.1996) (finding that defendant had taken a substantial step towards stealing property worth over $150 when defendant was found on a private lot with his truck hooked up to a utility trailer which the defendant did not own). Because Mr. Ballenger did not engage in any conduct comparable to the aforementioned activities that were clearly indicative of the individual's criminal purpose, we find that the trial court erred in concluding that Mr. Ballenger took a substantial step towards the commission of the crime of stealing anhydrous ammonia.

## IV. Conclusion

The trial court erred in finding Mr. Ballenger guilty of attempting to steal anhydrous ammonia. Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court with directions to vacate Mr. Ballenger's conviction and sentence.

HAROLD L. LOWENSTEIN, P.J. and RONALD R. HOLLIGER, J., concur.