**STATE of Missouri, Plaintiff–Respondent,**

v.

**Gary E. WENZEL, Defendant–Appellant.**

**No. 25082.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 19, 2003.

Susan L. Hogan, Office of State Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Patrick T. Morgan, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Gary E. Wenzel (defendant) appeals his conviction for manufacturing methamphetamine, a controlled substance. § 195.211.2.[1] Defendant was charged as, found to be, and convicted as a persistent offender. *See* § 558.016.3. This court affirms.

Defendant challenges the sufficiency of the evidence used to convict him. In reviewing that challenge, this court accepts as true all evidence favorable to the state, including favorable inferences that may be drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Parnell*, 21 S.W.3d 896, 899 (Mo.App.2000).

On the morning of October 4, 2001, Crawford County Deputy Sheriff Rick Walls was travelling thorough Leasburg when he saw defendant. Deputy Walls knew there was an outstanding warrant for defendant's arrest. Defendant was standing in a driveway with another man, Brent Keyes. A gray Oldsmobile, a "two door with black stripes on the hood and trunk area," was in the driveway where the men were standing.

Deputy Walls turned around and headed toward the driveway where defendant had been standing. He radioed other deputies requesting assistance. Defendant backed the Oldsmobile from the driveway and drove toward Deputy Walls. Deputy Walls stopped his car on the right side of

the roadway. Defendant stopped his car on the other side of the roadway. Both men exited their cars. Deputy Walls told defendant not to run, that he was under arrest. Deputy Walls was asked the following questions at trial about what occurred and gave the following answers:

Q. Did he make a response back to you?

A. Yes he did.

Q. As closely as you can, what was his response to you in his words?

A. His response was, I'm not going to run I'm going to fight your ass.

Deputy Walls sprayed defendant with pepper spray, but defendant was not affected by it. Two other officers, Highway Patrol Trooper Christine Bogart and Deputy Sheriff William Patrick Moreland, were approaching from behind Deputy Walls. Defendant turned away from the officers and ran.

Deputy Walls and Trooper Bogart chased defendant. At one point defendant stopped, picked up a rock, and threw it at Deputy Walls. Deputy Walls had drawn his service revolver but did not fire. Defendant ran into a wooded area. He was not apprehended.

The officers returned to defendant's car. Trooper Bogart was the first to reach the car. She removed the keys. When the other officers returned to the car, Deputy Walls noticed a smell of ether coming from the car. He had received training regarding methods of producing methamphetamine and knew ether was a primary component in its manufacture. He detected the odor when he inspected the interior of the car and observed that the smell was also coming from the trunk. Deputy Walls opened the trunk where he found a methamphetamine laboratory. The trunk contained a diaper, crushed ephedrine pills, a plastic diaper pail, aluminum foil, contain-ers of liquids later determined to contain methamphetamine, and a glass jar with "heet" written on it.

Corporal Tim Hannan, a highway patrol officer assigned to narcotics duty, was called to assist. Corporal Hannan testified that he was an experienced narcotics officer; that he was knowledgeable regarding what was required to produce methamphetamine. Corporal Hannan stated that the components in the trunk were parts of a methamphetamine lab; that in his opinion, the liquids were being used to produce methamphetamine. Samples of the liquids were tested by a drug criminalist employed by the Missouri State Highway Patrol Crime Laboratory Division and determined to contain methamphetamine.

Defendant's sole point on appeal asserts that the trial court erred in denying his motions for judgment of acquittal filed at the close of the state's case and at the close of all the evidence and in submitting the case to the jury and accepting the verdict of guilty and imposing sentence. Defendant argues the evidence was not sufficient to prove him guilty beyond a reasonable doubt of manufacturing methamphetamine. He argues the state did not establish that he knowingly participated in manufacturing methamphetamine because there was no evidence that he possessed or knew about the methamphetamine laboratory equipment found in the trunk of the car he was operating; that he did not own the vehicle and was seen operating it for only a few seconds the morning he was confronted by Deputy Walls.

■ "The standard of appellate review of a claim of insufficient evidence to support conviction is whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Parnell*, 21 S.W.3d at 899.

Deputy Walls saw defendant standing in a driveway by the car in which the methamphetamine laboratory was found. He saw defendant enter the car and drive toward him. After defendant stopped the car and exchanged words with Deputy Walls, defendant ran from the car.

Deputy Walls was asked the following questions and gave the following answers concerning his observations of defendant and his experience in observing persons intoxicated by methamphetamine:

Q. How was [defendant] dressed?

A. Wearing a pair of blue sweat pants and that was all.

Q. Shoes?

A. No shoes, no shirt.

Q. Can you describe for me his demeanor and his appearance at that time?

A. His eyes were wide open, looked very nervous or excited, kind of irate acting.

Q. Did you notice anything unusual about the way, any actions or motions that he was making?

A. He was clenching both fists, puffing his arms, moving towards the back of his vehicle.

Q. Sir, you've been an officer since I think you said '87?

A. Yes.

Q. So thirteen years, fifteen years I guess?

A. Yes.

Q. Have you had occasion during the course of that time to see persons intoxicated by methamphetamine?

A. Yes I have.

Q. On approximately how many occasions?

A. A lot.

Q. Okay, did [defendant's] appearance at that time seem familiar to you?

A. Yes it did.

. . .

Q. Did you have any indication, did he have an appearance consistent with someone who is intoxicated on methamphetamine?

A. Yes he did.

Deputy Walls was also asked about the effect of pepper spray on persons who have used methamphetamine:

Q. Sir, have you had some experience during your fifteen years as a police officers [sic] with persons who are on methamphetamine and the effects of pepper spray on them?

A. Yes, I have.

Q. How does it effect [sic] them, or does it?

A. It usually doesn't.

■■■ "The crime of the manufacture of methamphetamine requires the state to prove the defendant: (1) manufactured methamphetamine and (2) was aware the substance he manufactured was methamphetamine." *Salmons v. State,* 16 S.W.3d 635, 638 (Mo.App.2000). The state must prove a defendant had actual or constructive possession of the materials being used to manufacture the substance. *State v. Potter,* 72 S.W.3d 307, 311–12 (Mo.App. 2002); *State v. Smith,* 33 S.W.3d 648, 653 (Mo.App.2000). The same standards of actual or constructive possession that apply in manufacture cases apply in possession cases. *State v. Potter, supra,* at 312.

■■■ Considering first the question of possession, the methamphetamine laboratory was in the trunk of the car defendant was operating and from which he fled. One in exclusive possession or control of premises where contraband is found is deemed to know and, therefore, possess the items at the premises. *State v. Allen,* 744 S.W.2d 865, 868 (Mo.App.1988). However, "the exclusive possession of premises

rule has been modified when automobiles are involved because of 'the reality of the contemporary use of the automobile as a means of social accommodation.'" *Id.*, *quoting State v. Bowyer*, 693 S.W.2d 845, 848 (Mo.App.1985). Defendant did not own the car he was operating. Thus, he is deemed not to have had exclusive control over it. *State v. Brown*, 683 S.W.2d 301, 303 (Mo.App.1984). Under these circumstances, additional independent factors are required to buttress an inference that defendant had knowledge of the presence of the methamphetamine lab and the nature of its use to produce methamphetamine. *Id.* The requisite elements of proof may, however, be proved by circumstantial evidence. *State v. Smith, supra.*

Defendant was in sole possession of the automobile that contained the methamphetamine laboratory at the time he stopped to converse with Deputy Walls. The odor of ether emanating from the trunk of the vehicle was discernable. Defendant fled the scene on foot, leaving the automobile in place. He refused to stop when the pursuing officers tried to apprehend him. (At one point he threw a rock at Deputy Walls.) Further, the evidence at trial, admitted without objection, was that he manifested the appearance of being intoxicated on methamphetamine. Deputy Walls testified that during his 15 years as a law enforcement officer, he had become familiar with persons who were intoxicated on methamphetamine; that defendant appeared to be in that state when he fled from Deputy Walls. Deputy Walls also testified that persons intoxicated on methamphetamine are prone not to react to pepper spray. When defendant was sprayed with pepper spray, he did not react.

With respect to the question of whether methamphetamine was manufactured, Corporal Hannan testified that in his opinion, fluids in the trunk of the car were being used to produce methamphetamine. A drug criminologist who tested the liquids testified that they contained methamphetamine.

The evidence was sufficient for a juror to find, beyond a reasonable doubt, that defendant consciously and intentionally possessed the methamphetamine laboratory in the trunk of the vehicle he was driving; that he was aware of the presence and nature of the materials in the trunk of the car that were used to manufacture methamphetamine. The evidence that defendant was intoxicated on methamphetamine buttressed the inferences gleaned from his control of the vehicle and his having abandoned the vehicle when confronted by Deputy Walls. A juror could infer from defendant's apparent condition that he was knowledgeable about the characteristics of methamphetamine and its manufacture by his apparent use of it; that he was conscious of, and intentionally possessed, the manufacturing apparatus and substances in the automobile trunk that were producing methamphetamine. Defendant's point is denied. The judgment is affirmed.