**STATE of Missouri, Plaintiff–Respondent,**

v.

**Darrell H. DAVIS, Defendant–Appellant.**

No. 26022.

Missouri Court of Appeals, Southern District, Division One.

Oct. 22, 2004.

Margaret M. Johnston, of Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. Leslie E. McNamara, Assistant Attorney General, Jefferson City, for respondent.

JAMES K. PREWITT, Judge.

Darrell H. Davis ("Defendant") appeals his conviction on the class D felony offense of possession of drug paraphernalia with the intent to manufacture methamphetamine, in violation of § 195.233, RSMo 2000. Defendant was convicted as a prior and persistent offender and sentenced to four years in the Department of Corrections. Defendant raises one point and challenges the sufficiency of the evidence used to convict him.

In our review of Defendant's challenge to the sufficiency of the evidence, we are limited to ascertaining whether there was sufficient evidence from which a reasonable juror could have found Defendant guilty beyond a reasonable doubt. *State v. Arles*, 998 S.W.2d 136, 139 (Mo.App.1999). We accept as true all evidence favorable to the State, including any favorable inferences that may be drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Wenzel*, 119 S.W.3d 650, 651 (Mo.App.2003). Although we review the evidence in the light most favorable to the verdict, we do not supply missing evidence or give the State

the benefit of any unreasonable or speculative inferences. *See State v. Shipp*, 125 S.W.3d 358, 359 (Mo.App.2004).

## Facts

Given the standard outlined above, the following facts were adduced at trial. On June 13, 2002, Officer Brian Henderson of the Joplin Police Department encountered a van on which the license plate light was not working. As Officer Henderson turned his vehicle around and activated his lights to make a stop, the van turned into a parking lot without using a turn signal. Officer Henderson followed the van into the parking lot and pulled behind the van.

As Officer Henderson exited his patrol car, Defendant exited the driver's side of the van, and Officer Henderson asked Defendant "to step back in" the van. Defendant locked and shut the door of the van, and turned to face the officer. Officer Henderson asked Defendant for a driver's license, which Defendant did not produce. Officer Henderson contacted dispatch and was advised that Defendant's license was revoked. Officer Henderson placed Defendant under arrest for driving while revoked.

According to Officer Henderson, when he approached the van, he detected a strong chemical odor emanating from the van, an odor Officer Henderson had only smelled before at methamphetamine labs. After Officer Henderson placed Defendant under arrest for driving while revoked and placed Defendant in the patrol car, Officer Henderson noticed the same strong odor was coming from Defendant's person as well.

Another officer had been called to the scene, Officer Homer Knisley, also of the Joplin Police Department, and after placing Defendant in Officer Henderson's patrol car, the two officers searched the van. Officer Knisley also noticed the strong chemical odor on Defendant when Officer Knisley came within five to seven feet of Defendant. Officer Knisley had encountered the odor before, on fifteen to twenty previous occasions, and described the odor as "a methamphetamine chemical odor[.]" Officer Knisley had never smelled anything like it that was not associated with methamphetamine.

Officer Henderson searched the front part of the van, around the driver's seat and front passenger's seat and around the steering wheel. Officer Henderson did not locate anything in that part of the vehicle that he would associate with the manufacture of methamphetamine. Officer Henderson did, though, encounter the strong odor in the van as he opened the door to conduct the search. The odor was stronger than when Officer Henderson was standing outside of the van during the initial portion of the stop.

Officer Knisley, however, found various items. The van itself had been converted for home-type use and contained a sink, cabinets, shelves, and a microwave. There was also a mattress in the back of the van, as well as other items such as clothes and garbage. Underneath the sink, Officer Knisley located two containers labeled Red Devil Lye and one marked Heet. The contents of the canisters were consistent with those products. Within the microwave, Officer Knisley located 167 pills in plastic wrap. Testing of the pills showed that they contained ephedrine or pseudoephedrine, and a compound called tripoladine. Officer Knisley also found some clear plastic tubing toward the rear of the van.

Sergeant Bill Goodwin of the Joplin Police Department also participated in the search of the van. He arrived at the scene after the pills had been found. In his search of the van, Sergeant Goodwin located some unused coffee filters in a cabinet

behind the driver's seat, and a glass beaker in a bag by the front passenger's seat. The filters and beaker were clean and were not tested for any residue. Neither Sergeant Goodwin nor Officer Knisley found a coffee pot in the van.

Sergeant Goodwin also noticed the strong chemical odor inside the van, an odor Sergeant Goodwin identified as a distinctive odor associated with methamphetamine labs, and an odor he encountered at over 100 such labs. According to Sergeant Goodwin, the odor is not an odor generated by products like Red Devil Lye or Heet on their own, but is an odor associated with "some combination of the process used during the cook of meth[.]" How long before the odor dissipates following a methamphetamine cook depends on the number of cooks conducted, but Sergeant Goodwin indicated that it was his experience that the odor "stay[ed] for quite a while and [is] a very strong odor."

Defendant was charged by amended information as a prior and persistent offender with the class D felony of possession of drug paraphernalia with intent to manufacture methamphetamine, in violation of § 195.233, RSMo 2000. At the jury trial, Officer Henderson, Officer Knisley, and Sergeant Goodwin testified, as well as Dr. Bradley Hart, an employee at the crime lab on the campus of Missouri Southern State College in Joplin, and Officer Larry Stout, a narcotics investigator with the Joplin Police Department. All testified for the State; no witnesses were called on Defendant's behalf.

Dr. Hart and Officer Stout both testified regarding items that were not found in the search that were necessary to manufacture methamphetamine. Dr. Hart indicated that the materials found during the search were among those "commonly found in the clandestine manufacture of methamphetamine[,]" but that, depending on the meth-od, some items were missing. If the H I red phosphorous method was used, a source of iodine and the compound red phosphorous were needed. To manufacture methamphetamine under the lithium ammonia reduction method, a source of lithium and liquid ammonia were necessary.

Officer Stout testified that three items associated with a meth lab were missing, including red phosphorous, iodine, and acid. Under cross examination, Officer Stout agreed other items were missing that were necessary to the "recipe" for the manufacture of methamphetamine to which he referred. These items included peroxide, mineral spirits, aluminum foil or salt, and Coleman camp fuel. Officer Stout also testified that a microwave could be used as the heat source in the manufacturing process for the ephedrine reduction.

Defendant filed a motion for judgment of acquittal at the close of the State's evidence, arguing that the State had failed to prove Defendant intended to manufacture methamphetamine. The State argued that the fact that Defendant may not have had all of the necessary elements for a methamphetamine cook did not preclude the jury from finding that Defendant's intention to manufacture methamphetamine was his reason for possessing the items found in the search. The State also argued that the odor to which several witnesses testified could be considered by the jury to determine intent. The trial court overruled the motion, as well as Defendant's motion for judgment of acquittal at the close of all evidence.

The jury found Defendant guilty of possession of drug paraphernalia with the intent to manufacture methamphetamine. Defendant was sentenced as a prior and persistent offender to four years in the Department of Corrections. This appeal followed.

## Discussion

As noted, Defendant raises one point in his appeal and challenges the sufficiency of the evidence. As in his motion at the close of the State's evidence at trial, Defendant concedes the possession of the items, but argues that the State failed to prove that he possessed those items with the intent to manufacture methamphetamine.

Defendant draws our attention to four cases in which the evidence was found to be insufficient, evidence that Defendant argues is similar to that offered by the State here to secure his conviction. In *Arles,* this Court reversed the conviction, finding that the evidence was insufficient to support the defendant's conviction for possession of pseudoephedrine with the intent to manufacture methamphetamine. 998 S.W.2d at 137. On appeal, this District noted that all of the items in the defendant's possession were legally acquired, but that the evidence was not sufficient to permit a reasonable juror to find that he intended to use the items to manufacture methamphetamine. *Id.* at 139. The items, which were among items purchased at a Wal–Mart, included a gallon of Coleman fuel, two cans of acetone, several boxes of antihistamine tablets, coffee filters, air line tubing, and propane. *Id.* at 137–38. Local police officers were called to the Wal–Mart based on the suspicions of a Wal–Mart employee, who thought the items being purchased were associated with the manufacture of methamphetamine. *Id.*

Defendant also asks us to consider two cases from the Western District of this Court, which were companion cases based on the same set of facts. *State v. Morrow,* 996 S.W.2d 679 (Mo.App.1999), and *State v. O'Brien,* 5 S.W.3d 532 (Mo.App.1999). With regard to these two cases, in *State v. Withrow,* 8 S.W.3d 75, 79 (Mo.banc 1999), the Missouri Supreme Court indicated that *Morrow* was among many cases that should no longer be followed to the extent that they incorporated the four common law elements into the substantial step analysis of the attempt statute. In *State v. Young,* 139 S.W.3d 194, 198 (Mo.App. 2004), the Western District of this Court placed the *O'Brien* case on that list as well. These determinations by the Missouri Supreme Court and Western District of this Court do not affect the discussion of *Morrow* and *O'Brien* in our analysis; thus, we continue by discussing the facts of those cases.

A confidential informant contacted police with the information that a man, later identified as Morrow, was purchasing toluene, a chemical paint thinner often used in the manufacture of methamphetamine. *Morrow,* 996 S.W.2d at 680. A different man, later identified as O'Brien, then purchased Liquid Fire, a drain cleaner also used in the manufacture of methamphetamine, from a farm supply store. *Id.* at 680–81. A search of the vehicle, which was occupied by Morrow and O'Brien, found the toluene and Liquid Fire, as well as four bottles of pseudoephedrine, one bottle of ephedrine mini-tablets, and an air tank. *Id.* at 681.

The appellate court determined, in appeals by both Morrow and O'Brien, that neither man's convictions of attempting to manufacture methamphetamine (or a controlled substance) and possession of ephedrine with the intent to manufacture methamphetamine were supported by the evidence. *Id.* at 683–84; *O'Brien,* 5 S.W.3d at 534–35. In *Morrow,* the appellate court specifically noted that "no laboratory or manufacturing equipment nor other ingredients necessary for the methamphetamine were found in [the defendant's] possession." *Morrow,* 996 S.W.2d at 683.

The last case noted by Defendant is *State v. Agee*, 37 S.W.3d 834 (Mo.App. 2001). Within that case, we determined that although the evidence was sufficient to establish that the defendant possessed pseudoephedrine, the evidence was not sufficient to support the intent element of the conviction on possession of pseudoephedrine with intent to manufacture a controlled substance. *Id.* at 837 and 839.

In *Agee*, as the police were attempting to stop Agee because his vehicle was without a license plate light, they observed an object thrown out the passenger-side window. *Id.* at 836. The officers retrieved a purse in which they found packets containing 168 pseudoephedrine tablets. *Id.* In a search of the defendant's vehicle, officers also found a leather and lead sap (or "blackjack") under the car radio and a propane tank from a barbeque grill in the trunk. *Id.* The defendant denied any knowledge of how to manufacture methamphetamine and, similar to *Morrow*, there was no laboratory or manufacturing equipment found, nor any other ingredients necessary for the manufacture of methamphetamine. 37 S.W.3d at 839.

We might very well agree with Defendant's assessment of the case at bar, if the only evidence before us were the 167 pseudoephedrine tablets, two canisters of Red Devil Lye, one container of Heet, plastic tubing, unused coffee filters, and a clean glass beaker. However, here we also had a microwave that could be used in the process and, more importantly, an odor that three law enforcement officials who were on the scene and participated in the search described as a very strong chemical odor, and an odor distinctive to the manufacture of methamphetamine, specifically the "cooking" process. None of the cases to which Defendant refers had the added element of the odor.

In *Wenzel*, among the items found were a diaper, crushed ephedrine pills, a plastic diaper pail, aluminum foil, containers of liquid containing methamphetamine, and a glass jar marked with the word heet. 119 S.W.3d at 652. Before officers search the defendant's car, they noticed a strong odor coming from both the trunk and the interior of the car. *Id.* On appeal, the evidence was found to support the defendant's conviction of manufacturing methamphetamine. *Id.* at 654.

We next consider *State v. Davis*, 982 S.W.2d 739 (Mo.App.1998), which was overruled in part and on other grounds by the Missouri Supreme Court in *Withrow*, 8 S.W.3d at 80, to the extent that it (and several other cases) "overlooked the rule of construction provided for in sec. 566.031." In *Davis*, several items were found, including pseudoephedrine pills, distilled water, coffee filters, a portable burner plate, 35 lithium photocell batteries, rubber tubing, and a jar containing a mixture later determined to be methamphetamine. *Davis*, 982 S.W.2d at 741 and 743. The officers also detected the strong smell of ether in the house. *Id.* at 741. The defendant's convictions for possession of methamphetamine and attempted manufacture of methamphetamine were found to be supported by the evidence. *Id.* at 742–43.

Missouri cases have established that a strong smell associated with methamphetamine, such as ether, is incriminating evidence of possession of materials used to manufacture methamphetamine. *See e.g., State v. Farris*, 125 S.W.3d 382, 387–88 (Mo.App.2004). Given the totality of the circumstances here, the odor provides incriminating evidence of the intent to manufacture methamphetamine. The odor indicates that someone had manufactured methamphetamine before in the van, and Defendant possessed certain items indi-

cating an intent to manufacture methamphetamine again. There was sufficient evidence to support both the possession element and the intent element of Defendant's conviction of possession of drug paraphernalia with intent to manufacture methamphetamine. Defendant's point is denied.

### Conclusion

The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.