**STATE of Missouri, Respondent,**

v.

**Gary D. LOWREY, Appellant.**

No. 27610.

Missouri Court of Appeals,
Southern District,
Division One.

April 24, 2007.

Petition for Rehearing or Reconsideration and Transfer Denied May 16, 2007.

Application for Transfer Denied
June 26, 2007.

Craig A. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joshua N. Corman, Office of the Attorney General, Jefferson City, for respondent.

DANIEL E. SCOTT, Judge.

Defendant was convicted, as a prior and persistent offender, of attempting to manufacture methamphetamine.[1] He challenges the sufficiency of the evidence that he acted alone or with another to commit the offense. Our standard of review requires us to consider only the evidence and reasonable inferences supporting the verdict, and disregard all those contrary. *State v. Wenzel*, 119 S.W.3d 650, 651 (Mo. App.2003). Doing so, we affirm.

Keith Miller worked at Son Auto Sales, which operated out of one end of a building otherwise occupied by a used appliance store. He came to work early one Saturday morning, and smelled ether or starting fluid as soon as he exited his car. When he went into his office, he could not breathe nor stay long enough to call for help. He went back to his car, drove down the road, and called 911.

Officer Jeremy Anderson arrived and smelled ether from 20–30 feet outside the building. He knew the odor from his experience with meth labs; ether is commonly used in meth-making. He entered the building, but the odor drove him out almost immediately, so he looked around outside. He rounded the corner of the building and saw someone get out of a pickup truck, which then sped off. Officer Anderson determined it was Randall Ruddle, who ran the appliance store, and explained that he needed to investigate a strange odor inside. Ruddle grabbed him and said, "Not without a f*cking warrant." Officer Anderson subdued and handcuffed Ruddle, placed him in the patrol car, and called for back-up.

---

1. Hereafter, and commonly known as, "meth."

Officer Austin Bentley responded, exited his patrol car, and smelled a strong odor of ether, which he also recognized from meth lab experience. The officers decided to search the store to be sure no one was inside, since ether can incapacitate or kill a person; it could have been a "life or death situation" for anyone inside.[2] They loudly shouted through the doorway that they were the police, and anyone inside should come out with their hands up. They waited two minutes, shouted it again, waited two more minutes, and shouted it a third time. When no one responded, the officers entered and made a "quick sweep" of the showroom for persons hiding, or lying on the floor dead or unconscious. They moved back to the office area, then down the hallway to another room. Working their way back through the store, they discovered a meth lab setup with a lit flame, and syringes that were later tested and found to contain meth.

When the officers reached an attached garage area in the back, they repeated their loud shouts that they were the police and to come out. No one responded, and the officers proceeded into this back area. Officer Bentley saw movement behind a child's beach ball on a ledge at least ten feet above the floor. The officers drew their weapons and called several times. Eventually, Defendant stood up and jumped down from the ledge. The officers could see no stairway or access to the ledge and no reason for a customer to be up there.

 Defendant claims the evidence was insufficient to show his involvement, alone or with others, in the meth-making activities on the premises. He notes that presence alone does not make a submissi-

ble case; there also must be some incriminating evidence of knowledge and control of the meth process or materials. A defendant's exclusive possession of the premises raises these inferences; otherwise, further evidence is needed to connect the defendant to the manufacturing process. *State v. Mickle*, 164 S.W.3d 33, 43 (Mo. App.2005). Further evidence could include proximity to the process or materials, access to the place they are located, or chemical odors associated with meth-making. *Id.* at 43–44. We consider the totality of the circumstances in deciding if additional circumstances raise an inference of knowledge and control to establish constructive possession of meth-making items. *Id.* at 44.

Defendant argues he did not exclusively possess the premises, since he did not own or work at the appliance shop. However, Defendant was alone in a building where a meth lab was operating, and both he and the illegal processes and materials were in non-public parts of the store. Even if not "exclusive possession," it certainly is an incriminating factor in contrast to the benign situation of a business patron in a store's customer area during retail hours.

Defendant also argues a submissible case is not made merely because he hid from the police. But Defendant did not *merely* do one thing—merely hide from the police, merely be on the premises, or merely be in proximity to illegal activities. The evidence and reasonable inferences place Defendant alone in a store building, in a non-public back area with no apparent business reason to be there. A plain view meth lab was operating, with an open flame burning. A sickening chemical odor so permeated the store that it could be

---

**2.** Ether's respiratory effects (numbing of senses, loss of consciousness) and flammability pose a public safety hazard, whether it is being used for a legal or illegal purpose. A strong smell of ether is indicative of possible danger and justifies further investigation by law enforcement officers. *See, e.g., State v. Rowland*, 73 S.W.3d 818, 823 (Mo.App.2002).

smelled well outside. It was so overpowering that an employee of a neighboring business could not call 911 from his office, but had to drive down the road to do so. The smell drove the first responding police officer back out of the building in a matter of seconds.[3] The police eventually re-entered, since they considered it a "life or death situation," and repeatedly shouted for anyone inside to come out. Instead of doing so, Defendant apparently retreated as the police advanced, and eventually climbed up and hid from them on a high ledge in the back. A jury could infer from these incriminating circumstances and inferences that Defendant was aware of and involved in the active meth-making in the building where he was alone and trying to hide. We affirm the conviction.

PARRISH, J., and RAHMEYER, P.J., concur.

---

3. Ether's smell has been a factor in upholding the submissibility of several meth-making cases. *See, e.g., State v. Wurtzberger,* 40 S.W.3d 893, 896 (Mo. banc 2001); *State v. Farris,* 125 S.W.3d 382, 388 (Mo.App.2004); *Wenzel,* 119 S.W.3d at 654; *Rowland,* 73 S.W.3d at 823; *State v. Booth,* 11 S.W.3d 887, 892 (Mo.App.2000).